UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JAMES D. LUEDTKE,

    Petitioner,

v.

ROBERT FARLEY, WARDEN,

    Respondent.

Civil No. 7:12-CV-44-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\*     \*\*\*     \*\*\*     \*\*\*

James D. Luedtke is an inmate confined in the United States Penitentiary-Big Sandy ("USP-Big Sandy") located in Inez, Kentucky. Proceeding *pro se*, Luedtke filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that USP-Big Sandy officials have (1) violated his Thirteenth Amendment rights by refusing to pay him the wages he has earned in his prison job, (2) failed to require all inmates to work, (3) racially discriminated against white inmates in favor of black inmates and "illegal aliens from Mexico," and (4) improperly placed him in refusal status for the Inmate Financial Responsibility Program ("IFRP")[1], in violation of his due process rights. On initial screening, the Court dismissed Luedtke's petition without prejudice, noting that his first three claims could not be raised in a § 2241 petition and must be presented in a civil action filed under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971). As to the fourth claim, the Court noted that while it is cognizable under § 2241, Luedtke had not established

---

[1] Luedtke refers to the Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R. §§ 545.10-545.11.9. "The IFRP is a work program instituted by the Bureau of Prisons to encourage each sentenced inmate to meet his or her legitimate financial obligations." *Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001).

that he had exhausted his administrative remedies on that claim prior to filing the habeas petition. For this reason, Luedtke's habeas petition was dismissed without prejudice to his filing a new petition asserting his IFRP claim where he can demonstrate that he has exhausted his administrative remedies as to that claim. [R. 7]

Luedtke appealed the dismissal. The Sixth Circuit affirmed the dismissal of Luedtke's first three claims, but vacated the dismissal of his fourth claim and remanded for further proceedings, concluding that the dismissal of Luedtke's fourth claim at the screening stage for failure to plead exhaustion or attach exhibits with proof of exhaustion was error. *Luedtke v. Berkebile*, 704 F.3d 465 (6th Cir. 2013). On remand, the Respondent has filed a response to Luedtke's petition. This matter is ripe for review. Having now considered Luedtke's fourth claim on the merits, for the reasons stated below, the Court concludes that said claim is without merit and that he is not entitled to no relief thereon.

**FACTUAL BACKGROUND**

Following a jury trial in the Eastern District of Wisconsin, Luedtke was convicted of bank robbery, brandishing a firearm during and in relation to a crime of violence, being a felon in possession of a firearm that had been transported in interstate commerce, and aiding and abetting the making of a false statement in the sale and disposition of a firearm. *United States v. James D. Luedtke*, Criminal No. 03-CR-37 (E.D. Wis. 2003). [R. 18-3] On January 14, 2004, Luedtke received an aggregate sentence of 444 months, to be followed by a five-year term of supervised release.[2] *Id.* Luedtke was also ordered to pay a $500.00 criminal monetary penalty and $12,377.00 in restitution. *Id.* The Judgment further specified that payment of the penalty and restitution was to begin immediately, and Luedtke was directed to participate in the BOP's IFRP. *Id.*

---

[2] The Bureau of Prisons ("BOP") projects Luedtke's current good conduct time release date to be May 1, 2035. Declaration of Stephen Lockwood, ¶ 2 and Attachment A, SENTRY Report, Inmate Data Public Information [R. 18-1, p. 2; R. 18-2, p. 1]

Luedtke arrived at USP-Big Sandy on February 3, 2010. Declaration of Stephen Lockwood, ¶ 4 and Attachment C, SENTRY Report, Inmate History [R. 18-1, p. 2; R. 18-4] Pursuant to BOP Program Statement 5380.08, Financial Responsibility Program, Inmate, and the IFRP, the Unit Team developed a payment plan with Luedtke. Initially, he concurred with the plan, agreeing to make quarterly payments of $25, beginning in September 2010. *Id.*, Attachment D, Inmate Financial Plan [R. 18-5] Luedtke made the payments as agreed until June 2011, when he missed that payment. [R. 18-6, p. 2] Luedtke was counseled, provided with a Failure to Make Payment Notice, and advised that his next payment was due in September 2011. *Id.* Luedtke also failed to make the September 2011 payment. *Id.*

In November 2011, Luedtke was placed in "IRFP Refusal Status" *Id.* He was notified thereof, advised as to why he was placed there and as to the consequences of being in "IFRP Refusal Status." *Id.* Specifically, by Memorandum to Luedtke dated November 16, 2011, Correctional Officer J. Kelly explained that he had been placed in IFRP Refusal Status for the following reasons:

> You have not followed your established payment plan because of insufficient funds in your account at the time scheduled FRP payments were due. A review of your commissary account records indicates that you did receive sufficient funds either money order and/or performance pay, but chose to use funds for other purposes.
>
> Your current FRP Refusal Status will continue until you establish an acceptable payment plan and make the necessary progress in complying with the provisions of your financial responsibility.

[R. 18-7, p. 1]

A separate form document was attached to this Memorandum advising an inmate that he had been placed in FRP Refusal Status and that such status will result in certain adverse

3

consequences to the inmate, itemizing a list of associated penalties, including ineligibility for (1) furloughs, (2) performance pay above the maintenance pay level, (3) job placement in UNICOR, (4) community-based programs, (5) release gratuity, and (6) incentive for participation in Residential Drug Treatment Program, as well as a $25 monthly limit on inmate commissary purchases, being placed in the lowest housing status (top bunk), and receiving a zero score on the "Responsibility" section of the inmate's Custody Classification score. [R. 18-7, p. 2]

Luedtke remained in "IFRP Refusal Status" until April 10, 2012, when he was placed in "FRP Exempt Status" due to a lack of funds in his inmate account during the previous months. Declaration of Stephen Lockwood, ¶ 6; Attachment E [R. 18-1, pp. 2-4; R. 18-6, p. 1] Under BOP Program Statement 5380.08, Financial Responsibility Program, Inmate, the Unit Team can place an inmate in a "Temporarily Exempt from Participation" status when an inmate is unable to obtain employment in Unicor, advance beyond maintenance pay, or has limited financial resources. [See Program Statement, Inmate 5380.08, p. 14 [R. 18-8, p. 14] Per this Program Statement, the Unit Team reviews an inmate's exempt status during subsequent program reviews and changes are made as needed. *Id.* Respondent advises that Luedtke has been in temporarily exempt status since April 10, 2012, where he still was of August 22, 2013. Declaration of Stephen Lockwood, ¶ 6 [ R. 18-1, p. 4] Consequently, no sanctions have been imposed against him after April 10, 2012, for his failure to make timely payments under the FRP. *Id.*

## DISCUSSION

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, federal courts consistently require federal prisoners to fully exhaust the BOP's available

4

administrative remedies before filing a petition seeking habeas corpus relief pursuant to § 2241. *Fazzini v. Northeast Ohio Corr. Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) (per curiam).

In his petition, Luedtke broadly alleged that he complied with the entire administrative remedy process, but that "there was no response at any level." [R. 1, p. 7] However, based on the Declaration of Joshua Billings, Senior Attorney, Consolidated Legal Center at FMC-Lexington, and the exhibits attached thereto, it appears that Luedtke failed to properly exhaust his BOP administrative remedies prior to filing his habeas petition. Mr. Billings states that he has access to the BOP's centralized database known as SENTRY, which contains a variety of information about an inmate, including the inmate's Administrative Remedy History, that he has reviewed Luedtke's Administrative Remedy History and that Luedtke did not exhaust his administrative remedies as to his claim that the BOP placed him in FRP refusal status and imposed sanctions against him, all in violation of his due process rights. Declaration of Joshua Billings, pp. 1-3 [R. 18-9, pp. 1-3] Nevertheless, even if Luedtke did not exhaust his administrative remedies as to his FRP refusal status claim, in the interests of judicial economy and finality to this litigation, the Court will assume *arguendo* that Luedtke has exhausted his administrative remedies and has reviewed Luedtke's claim on the merits.

First, the validity of the BOP's FRP has been implicitly endorsed by the Sixth Circuit. *Weinberger*, 268 F.3d at 360 (citing *United States v. Webb*, 30 F.3d 687, 690-91 (6th Cir. 1994). In *Weinberger,* the court held that a district court may adopt and incorporate into a sentence terms and conditions of the IFRP as established by the BOP and as binding on the prison officials who execute them. *Weinberger*, 268 F.3d at 361. Second, other courts

that have considered the constitutionality of the IFRP have uniformly held that it is within the power of the Attorney General and the BOP to adopt and implement this program. *See McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999) (noting that the IFRP "has been uniformly upheld against constitutional attack"); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2nd Cir.), (stating "the IFRP program serves valid penological interests and is fully consistent with the [Bureau's] authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation") *cert. denied* 498 U.S. 819 (1990); *United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993) (acknowledging that other circuits have upheld the constitutionality of the IFRP). *See also United States v. Callan*, 96 F. App'x 299, 301 (6th Cir. 2004) (holding that there is no constitutional, statutory, or decisional authority for the proposition that a federal district court has the subject matter jurisdiction to micro-manage the IFRP for the BOP).

The FRP regulations require that BOP staff review an inmate's participation in the program. *See* 28 C.F.R. § 545.11(c) ("Participation and/or progress in the [FRP] will be reviewed each time staff assess an inmate's demonstrated level of responsible behavior."). The regulations also provide the authority for imposing sanctions on an inmate who refuses to participate in the program. *See* 28 C.F.R. 545.11(d) ("Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following [sanctions].").

The FRP regulations clearly specify that there are consequences if an inmate refuses to participate in the FRP, and said consequences have been upheld as proper and constitutional. *See, e.g., Johnpoll,* 898 F.2d 849. While being in the "IFRP Refuse Status" means a loss of certain privileges, it does not result in the imposition of discipline that

6

would trigger a constitutionally protected interest. *See* 28 C.F.R. § 545.11(d) (listing privileges withheld from inmates for refusing to participate in the IFRP) *See also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that liberty interests created by prison regulations are limited to instances where such regulations impose atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life).

## ANALYSIS

As seen from Luedtke's underlying criminal case, the court imposed a $500 criminal monetary penalty and ordered $12,377.00 in restitution. [R. 18-3, p. 5]. The Judgment specified that "if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment." [R. 18-3, p. 6] The court also ordered that payment was to begin immediately and that Luedtke was to participate in the BOP's IFRP *Id*. After Luedtke arrived at USP-Big Sandy, in compliance with the terms of the Judgment, the Unit Team developed a payment plan with Luedtke, and he agreed to make quarterly payments of $25, beginning in September 2010. Luedtke made the payments as agreed until June 2011. After he missed that payment, he was counseled, provided with a Failure to Make Payment Notice, and advised that his next payment was due in September 2011. Luedtke then failed to make the September 2011 payment.

It is clear that after Luedtke failed to make the quarterly payments as he agreed to do under the IFRP, the BOP properly placed him in "FRP Refusal Status," consistent with BOP Program Statement 5380.08. At that time, Luedtke was also advised of the consequences of being placed in that status (those sanctions are itemized in 28 C.F.R. § 545.11(d)) and was further advised that he would be subject to those sanctions as long as he

7

remained in "FRP Refusal Status." There was no due process violation. Subsequently, on April 4, 2012, under BOP Program Statement 5380.08, <u>Financial Responsibility Program, Inmate</u>, the Unit Team removed him from "FRP Refusal Status" and placed him in "Temporarily Exempt from Participation" status in the IFRP due to a lack of sufficient funds in his inmate account over the previous months. As long as Luedtke is exempt from participation in the IFRP, he is not subject to any sanctions for not participating therein.

## CONCLUSION

Consequently, for all of the foregoing reasons, Luedtke's claimed due process violation for being placed in "FRP Refusal Status" and being subject to the associated sanctions is without merit. Luedtke is entitled to no relief on his habeas petition.

Accordingly, **IT IS ORDERED** that:

1. James D. Luedtke's 28 U.S.C. § 2241 petition for writ of habeas corpus [R. 2] is **DENIED**.

2 This proceeding is **DISMISSED** and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

Dated this 25th day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY